UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INCREDIBLEBANK, | : |
|     Plaintiff, | : |
| | : |
| v. | :    C.A. No. 22-445JJM |
| | : |
| PROVOCATIVE (O.N.1248080), et al. | : |
|     Defendants. | : |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      This is an admiralty case filed on December 15, 2022, pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule D") brought by IncredibleBank ("Incredible") against the Vessel Provocative (the "Vessel"), together with her trailer, engines, tackle and appurtenances, (collectively the "Secured Property"), *in rem*, with supplemental claims pursuant to state law for replevin against the Secured Property and for breach of contract against the owner of the Secured Property, Jonathan Cohen, *in personam*. ECF No. 1. Incredible claims that Mr. Cohen is liable because he has defaulted on a Promissory Note that was secured by the Secured Property, which entitles it to contractual damages, including interest, attorney's fees and expenses; it also claims breach of the related Security Agreement and seeks the remedies that it affords in the event of default. Specifically, proceeding *in rem* against the Secured Property, Incredible seeks possession and title; proceeding *in personam* against Mr. Cohen, Incredible seeks a money judgment for its damages.

      Also participating in the case is Outerlimits Offshore Performance Ltd. ("Outerlimits"), a Rhode Island manufacturer of high-performance boats. Outerlimits was the original manufacturer of the Vessel and is the location where the Secured Property is currently located. Outerlimits was appointed by the Court as the substitute custodian of the Secured Property on

January 12, 2023, and is entitled to be paid for its *custodia legis* fees and expenses. ECF No. 10. Outerlimits has also asserted a "necessaries" maritime lien against the Secured Property for storage costs and repairs performed before it was appointed substitute custodian as reflected in a Verified Statement of Interest filed on March 7, 2023. ECF No. 14; see also ECF No. 24 at 1. While the amount of Outlimits' pre-suit lien is disputed, the parties do not dispute that both the maritime lien and the *custodia legis* lien have priority over Incredible's rights with respect to the Secured Property.

Now pending before the Court is Incredible's motion for final judgment on the pleadings pursuant to Fed. R. Civ P. 12(c) asserting its rights pursuant to Rule D to possession and title to the Secured Property and for interim judgment of liability against Mr. Cohen based on his breach of the operative agreements, with further proceedings to calculate the amount of damages. ECF No. 20. Incredible contends that Mr. Cohen's Answer to its Verified Complaint admits all of the operative facts. Id. Mr. Cohen has not objected to the motion.[1] Outerlimits has advised the Court that it does not object to the entry of judgment as requested by the motion but has raised concerns about certain of Incredible's arguments. The motion has been referred to me for report and recommendation. Based on the briefs, a hearing and the analysis that follows, I recommend that the motion be granted in part and denied in part for the reasons that follow.

I.      **Background**

---

[1] Despite the Court having delayed the date of the hearing on the motion in part to accommodate Mr. Cohen, ECF No. 32 at 1, and despite his having received notice of the hearing electronically by email sent to his email of record with no bounce-back, Mr. Cohen did not appear at the zoom hearing held on December 5, 2023. Based on Mr. Cohen's non-opposition to Incredible's motion, there is nothing surprising or wrongful about Mr. Cohen's failure to appear. Nevertheless, the Court is aware that Mr. Cohen contacted the Clerk's office a few minutes after the hearing ended, using an email address different from the one he has registered with the Court for electronic receipt of filings, complaining that he had not seen the hearing notice. Mindful of Mr. Cohen's facility with timely participation in all proceedings to that date and of his duty to advise the Court of any change in the applicable email address, DRI LR Gen 205(d), to the extent that Mr. Cohen later attempts to assert new arguments that could have been raised at the hearing, I find that Mr. Cohen waived his right to appear.

A. **The Pleadings**

By its Verified Complaint (ECF No. 1, "Complaint"), Incredible is proceeding against the Secured Property *in rem* for possession (Count I) and title (Count II) in admiralty pursuant to Rule D and pursuant to Rhode Island state law (replevin) (Count IV), and against Mr. Cohen *in personam* for state law breach of contract damages (Count III). Attached to the Complaint are copies of the Promissory Note (ECF No. 1-1) and the Security Agreement (ECF No. 1-2) signed by Mr. Cohen on which Incredible relies. The Complaint clearly labels paragraphs 8-40 as the "Factual Allegations." ECF No. 1 at 3-8.

In response to the Complaint, Mr. Cohen filed a *pro se* Verified Answer (ECF No. 12, "Answer") in which he admits that he is an individual, that he executed the Promissory Note, that the Secured Property is presently in Rhode Island, that he insured the Secured Property and that he made two insurance claims on the Secured Property that were communicated to Incredible. ECF No. 12 ¶¶ 7, 8, 31-33, 35-36. Mr. Cohen denies that his current address is in Beverly Hills, California, and that he is currently in possession of the Secured Property, which he admits is located at Outerlimits in Rhode Island. ECF No. 12 ¶¶ 7, 40. Mr. Cohen responded to the balance of Incredible's Factual Allegations by pleading that "the allegations . . . constitute legal argument(s) or legal conclusion(s), [and] no answer is required." E.g., ECF No. 12 ¶ 9. Mr. Cohen's Answer contains no affirmative defenses.

Incredible's motion for judgment on the pleadings was originally filed on June 12, 2023. In it, Incredible made plain its position that Mr. Cohen's pleading that certain of Incredible's factual "allegations . . . constitute . . . legal conclusion(s)" amounts to an admission of any fact to which it pertains.[2] ECF No. 20 at 4, 6-9. Following the filing of the motion, it was put on hold

---

[2] Incredible's position is well grounded in the proposition that pleading that a factual allegation is a legal argument or legal conclusion as to which no answer is required amounts to an admission as to such fact. Fed. R. Civ. P.

as Incredible, Mr. Cohen and Outerlimits actively participated in court-annexed mediation. After the mediation reached impasse, the Court set a schedule for further briefing and argument on the motion. During the six months that the motion has been pending, Mr. Cohen has not quibbled with Incredible's interpretation of his pleading nor has he sought leave to amend his Answer. Nor did he object to Incredible's motion for entry of judgment. Further, based on Mr. Cohen's extensive active participation in proceedings in this case, including the mediation over which I presided, I find that, although he is *pro se*, Mr. Cohen is clearly far more sophisticated than the typical *pro se* litigant. Brown v. CitiMortgage, Inc., Case No. 16-cv-11484-LTS, 2016 WL 9223830, at *1 (D. Mass. Oct. 20, 2016). Therefore, I find that the indulgence usual for the filings of *pro se* litigants is not appropriate for the Court's interpretation of Mr. Cohen's Answer. See Rhode Island Hosp. Tr. Nat'l Bank v. Howard Commc'ns Corp., 980 F.2d 823, 828 n.8 (1st Cir. 1992); In re Cyphermint, Inc., Civil Action No. 09-40138-FDS, 2011 WL 2417132, at *4 (D. Mass. June 10, 2011) (citing Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002) (*pro se* litigant not entitled to special treatment where litigant was a "sophisticated" businessman)). Based on these circumstances, and mindful of Mr. Cohen's failure to seek leave to amend his Answer and failure to assert any opposition to the motion, I find that the operative Factual Allegations drawn from Incredible's Complaint as laid out below are deemed admitted for purposes of the Court's analysis of Incredible's motion.

    **B.**     <u>**The Admitted Facts**</u>

---

8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."); see Mahanor v. United States, 192 F.2d 873, 876 (1st Cir. 1951) ("averments in a pleading to which a responsive pleading is required are admitted when not denied") (internal quotation marks omitted); Trustees of IBEW Local No. 7 Pension Fund v. DAW MAC Service, Corp., C.A. No. 13-cv-30029-MAP, 2014 WL 4656874, at *3 (D. Mass. Sept. 15, 2014) (defendant's failure to deny facts alleged in complaint or state defendant was without sufficient knowledge or information to answer constitutes admission); Gomez v. United States, No. 09-22148-Civ., 2010 WL 3834211, at *2 (S.D. Fla. Sept. 28, 2010) (factual allegation answered by pleading only that it states a legal conclusion is deemed admitted).

On July 1, 2019, Mr. Cohen executed the Promissory Note memorializing a loan of $225,600 from Incredible and the loan proceeds were made available to him. ECF No. 1 ¶ 8. To secure the loan, Mr. Cohen executed the Security Agreement, "grant[ing] to [Incredible] a security interest in all of the [Secured Property]." Id. ¶¶ 9-12; ECF No. 1-2 at 1. The Promissory Note and the Security Agreement both provide that they are governed by federal law, and by state law only to the extent that state law is not preempted by federal law. ECF No. 1-1 at 2; 1-2 at 3. For applicable state law to the extent not preempted, the Promissory Note invokes the law of Wisconsin, while the Security Agreement invokes the law of California for procedural matters and otherwise the law of Wisconsin.[3] Id.

Beginning in late 2019, Mr. Cohen was in default as he repeatedly failed to pay as agreed. ECF No. 1 ¶ 22; see ECF No. 1-1 at 1 (default is failure to make "any payment when due"). Despite a modification of the loan,[4] the default persisted, ultimately resulting in Incredible's declaration of default as of August 12, 2022. Id. ¶¶ 23-27. Under the terms of the Promissory Note and the Security Agreement, default means that the entire unpaid balance and all accrued unpaid interest became immediately due. ECF No. 1-1 at 2; ECF No. 1-2 at 2. To the present, the loan remains unpaid and Mr. Cohen remains in default. Id. ¶ 28-29. In addition to default based on non-payment in breach of the Promissory Note, Mr. Cohen also breached two terms of the Security Agreement. First, beginning just before he stopped paying Incredible, Mr. Cohen made a series of insurance claims based on losses arising from damage to the Secured Property. Id. ¶¶ 35-36. While the first two claims (totaling $122,745.01) were disclosed to Incredible, id. ¶

---

[3] Incredible's principal place of business is in Wisconsin.

[4] The Modification Agreement afforded Mr. Cohen a reset to avoid default if he began to pay as agreed. ECF No. 1-6. He did not. ECF No. 1 ¶¶ 25-26.

5

36, during April through May 2020, Mr. Cohen made additional insurance claims totaling $36,854.20; in breach of his contractual obligation to inform Incredible of any losses or damage to the Secured Property, Mr. Cohen did not disclose the latter claims to Incredible, nor have any insurance proceeds been paid to Incredible.  Id. ¶¶ 34-39.  Instead, after he first went into default of the duty to pay, on April 24, 2020, in breach of his duty not to move the Secured Property from California except with Incredible's consent, Mr. Cohen wrongfully moved the Secured Property from his own possession in California to the physical possession of Outerlimits in Rhode Island where it is currently located.  Id. ¶¶ 6, 30-33; ECF No. 12 ¶¶ 6, 30-33.

Incredible has publicly declared and/or perfected its security interest in the Secured Property separately as to each of its components.  Id. ¶¶ 13-15.  As to the Vessel, in 2021, Incredible "obtained title" in Nevada as reflected in a Nevada Certificate of Ownership (Title), which lists Incredible as the "legal owner" with Mr. Cohen (based on an address in Nevada) as the "registered owner."  Id. ¶ 13; ECF No. 1-3.  For the trailer, in 2022, a Certificate of Title was filed in California listing Incredible as the lienholder and Mr. Cohen (with an address in California) as the "registered owner[]"; for the engines, in 2020, a UCC Financing Statement was filed in California listing Incredible as the "secured party" and Mr. Cohen (with a different address in California) as the "debtor."  Id. ¶¶ 14-15; ECF Nos. 1-4, 1-5.

The Promissory Note and Security Agreement make clear that Mr. Cohen may keep and use the Secured Property only so long as he is not in default.  The Security Agreement lays out the legal consequences of default based on nonpayment as follows:

- Incredible has all of the rights of a secured party under the Uniform Commercial Code.  ECF No. 1-2 at 2.

- Incredible has the right to enter Mr. Cohen's premises and "take the [Secured Property] peaceably and sell it."  Id.

- Incredible has the consent of Mr. Cohen to enter any other premises to "retake[]" possession of the Secured Property. Id.

- Mr. Cohen has irrevocably appointed Incredible as his attorney-in-fact to "execute documents necessary to transfer title." ECF No. 1-2 at 1.

- If Incredible exercises its right to sell the Secured Property in the event of default, the net proceeds of the sale shall be applied to reduce the amount owed to Incredible with Mr. Cohen continuing to owe any difference between the amount owed and the net proceeds of a sale. ECF No. 1-2 at 2.

While clearly conferring Incredible's rights in the event of default to possession of the Secured Property and to sell the Secured Property, neither the Promissory Note nor the Security Agreement confers on Incredible more than a security interest in the Secured Property. That is, these documents do not confer title on Incredible; rather, they empower Incredible to act as Mr. Cohen's "attorney-in-fact to execute documents necessary to transfer title if there is a default," for example, to facilitate a sale of the Secured Property to a third party who would become the new owner. ECF No. 1-2 at 1. Further, Mr. Cohen retains his substantive rights under Wisconsin law to surplus equity on disposition of the collateral, or to contest the commercial reasonableness of any sale. Kraenzler v. Brace, 773 N.W.2d 481, 486 (Wisc. Ct. App. 2009); see March v. Linn, 865 N.W.2d 885, 2015 WL 1650098, at *3 (Wisc. Ct. App. 2015) (Table) (secured party must proceed in a commercially reasonable manner in disposing of collateral and applying proceeds to offset outstanding obligation).

C. **Claims and Liens**

Based on the facts set out above, Incredible contends that it is entitled to a judgment placing it in possession of the Secured Property and declaring that it is the true owner, as well as judgment against Mr. Cohen for the contractual damages caused by Mr. Cohen's breaches, plus interest, costs, expenses and attorney's fees pursuant to the terms of the Promissory Note and the

Security Agreement.  ECF No. 1 ¶¶ 46, 50, 58-59, 67.  The Complaint also contends that Incredible's total contractual damages were $224,184.73,[5] as of the date of the pleading, plus prejudgment interest, costs and attorney's fees.  Id. ¶ 59.

Outerlimits entered this case on March 7, 2023, by filing a Verified Statement of Interest.  ECF No. 14.  Not reflected in the pleadings but revealed by Outerlimits' Statement are the facts that, after the Secured Property arrived in Rhode Island, Outerlimits claims that it performed substantial repairs at Mr. Cohen's request, as well as that Outerlimits provided storage services.  ECF No. 14 ¶¶ 3-4; ECF No. 14-1.  The invoice attached to the Statement, ECF No. 14-1, indicates that the net amount claimed to be owing on account to Outerlimits by Mr. Cohen is $70,590.87, which remains unpaid.  ECF No. 14 ¶ 6.  Following the Vessel's arrest on January 12, 2023, the Secured Property has remained in the physical possession of Outerlimits as the court-appointed custodian.  ECF No. 10.

**II.     Standard of Review**

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  "Judgment on the pleadings is proper only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment."  Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007) (internal quotation marks omitted).  The court considers a Rule 12(c) motion according to the same standard as a Rule 12(b)(6) motion.  Jay Blahnik Inc. v. WaterRower, Inc., C.A. No. 1:21-CV-00026-MSM-PAS, 2022 WL 910929, at *4 (D.R.I. Mar. 29, 2022).  While a 12(c) motion is typically "based solely on the factual allegations in [the pleadings]," NEPSK, Inc. v.

---

[5] Paragraph 58 of the Complaint alleges $224,184.*71* in damages while paragraph 59 alleges $224,184.*73*.  Because I am recommending judgment of liability only as to damages, with the amount to be proven in further proceedings, this difference is immaterial.

Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002), the court also may consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (internal quotation marks omitted). The court is "compelled to accept all factual allegations as true without crediting any conclusory legal allegations." Conservation L. Found., Inc. v. Shell Oil Prods. US, C.A. No. 17-00396-WES, 2022 WL 2353065, at *1 (D.R.I. June 30, 2022), adopted by text order (D.R.I. July 15, 2022). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

"'[T]he mere fact that a motion [for judgment on the pleadings] is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.'" Principe v. M 2 M Glob. Corp., Civil No. 17-2262 (ADC), 2018 WL 4735720, at *4 (D.P.R. Sept. 28, 2018) (quoting Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003)). That is, while the Court may rely on facts admitted based on the lack of a denial, it may not simply grant a motion for judgment on the pleadings due to the lack of an opposition without first considering the pleadings and the motion's substance.

### III. Analysis

#### A. Admiralty Claims

The applicable admiralty rule, Rule D, governs possessory actions and petitory actions to quiet title involving vessels, over which the federal courts have exclusive admiralty jurisdiction. Mullane v. Chambers, 333 F.3d 322, 327-28 (1st Cir. 2003) ("It is beyond dispute that admiralty jurisdiction extends to possessory and petitory actions.") (citing Ward v. Peck, 59 U.S. (18 How.)

267, 267 (1855) ("In this country . . . the ancient jurisdiction over petitory suits or causes of property has been retained [by courts of admiralty].")). An action under Rule D proceeds *in rem* to assert title or a possessory right to a vessel or other maritime property and is commenced by arrest of the vessel and related property, as Incredible did in this case. See Barsom v. P/V AQUIDNECK FERRY, No. CA 12-808 S, 2013 WL 5447551, at *2 (D.R.I. Sept. 30, 2013).

A "possessory action" is one in which a party who claims to be entitled to possession of a vessel of which it is wrongfully dispossessed seeks to recover the vessel. Wehr v. Pheley, No. C 99-4574 SI, 2000 WL 236438, at *3 (N.D. Cal. Feb. 16, 2000). The action "must seek to recover possession rather than to obtain original possession, and the [plaintiff] must allege wrongful deprivation of property." Offshore Express, Inc. v. Bergeron Boats, Inc., No. 77-2202-Sec. D, 1978 A.M.C. 1504, 1506, 1977 WL 6476159 (E.D. La. Oct. 5, 1977) (contractual power to exercise dominion and control constitutes constructive possession adequate for purposes of the requirement of prior possession); see Trueman v. Historic Steamtug New York, 120 F. Supp. 2d 228, 233 (N.D.N.Y. 2000) (legal title "arguably transferred" by contract sufficient to establish jurisdiction under Rule D), appeal dismissed, 14 F. App'x 106 (2d Cir. 2001). "A petitory suit is utilized to assert legal title to a vessel . . . with a specific adversary in mind, rather than to perfect a title against everyone in the world." Wehr, 2000 WL 236438, at *3.

Incredible's Fed. R. Civ. P. 12(c) motion asks the Court to enter judgment in its favor and against the Secured Property on Counts I and II, for immediate possession and title. ECF No. 20 at 9. Incredible's motion does not have a developed argument asking for the entry of judgment for possession on Count IV, the state law claim against the Secured Property for replevin. At the hearing, Incredible clarified that Count IV was pled in the alternative, that the replevin claim is preempted by the admiralty claim for possession pursuant to Rule D and that the replevin claim

will be moot and should be dismissed once judgment of possession pursuant to Rule D becomes final.

Having carefully reviewed the Complaint, Answer and the contractual documents (the Promissory Note and the Security Agreement), I find that Mr. Cohen's admitted default of his duty to pay under the Promissory Note beginning in late 2019 entitled Incredible to immediate possession of the Secured Property, but that instead Mr. Cohen moved it to Outerlimits in Rhode Island in breach of his duty to obtain consent from Incredible and that Incredible now has the right to retake possession of the Secured Property, as provided by the Security Agreement, as well as to exercise the right to sell and the right to "transfer title" (as the holder of Mr. Cohen's power of attorney) to any buyer at a commercially reasonable sale. ECF No. 1-2 at 1. Therefore, with respect to Incredible's Rule D admiralty claim in Count I, when the applicable law is applied to the Complaint's facts – both those that are admitted and those that are deemed admitted – I find that there are no trial-worthy disputes and judgment for possession should enter as Incredible asks. Relying on Barsom, I recommend that the Court enter judgment pursuant to Fed. R. Civ. P. 12(c) in favor of Incredible and against the Secured Property on Count I for possession. 2013 WL 5447551, at *3.

The only potential fly in this otherwise smooth ointment comes from Outerlimits, which, despite its lack of opposition to the relief Incredible seeks, has filed an opposition to the motion for judgment against the Secured Property on Count I. With regard to Incredible's right to possession, Outerlimits argues that such a claim may be brought only by a claimant who originally was in physical possession of a vessel that was wrongfully taken. ECF No. 24 at 1, 5. Therefore, it contends there is no wrongful taking in that Mr. Cohen had the right to keep and use the Secured Property until he was in default. Id. at 1-2. To the extent that this Court held in

Barsom that a Rule D claim is an appropriate mechanism grounded in admiralty jurisdiction for a lender to acquire possession of and title to a vessel securing a loan following default, Outerlimits contends that Barsom is wrongly decided. Id. at 6 n.4.

I do not agree. Contemporary admiralty decisions make clear that prior actual possession is not necessary for a Rule D claimant as long as there was a right of possession (constructive possession) that preceded the bringing of the Rule D action. See, e.g., Richmond Materials Co. v. Dredge La Concha, Civil Action No. 06-557, 2009 WL 10705198, at *4-5 (S.D. Tex. Mar. 2, 2009) (legal claim of possession is sufficient to support Rule D claim despite lack of prior actual possession); Offshore Express, Inc., 1978 A.M.C. 1504, 1977 WL 6476159 (owner who has been wrongfully deprived of right to possession of a vessel may initiate Rule D action to secure return of vessel despite lack of prior possession; construction possession is sufficient). Here, Incredible's constructive right of possession arose when Mr. Cohen's right to "keep and use the [Secured Property]" lapsed as soon as he entered default for the first time in December 2019, ECF No. 1-2 at 2, well before the filing of this Rule D action in December 2022; further, Mr. Cohen wrongfully deprived Incredible of its right of possession when he moved the Secured Property to Outerlimits in Rhode Island without Incredible's consent. As in Barsom, Incredible is the secured creditor of a Vessel and related Secured Property whose registered owner is in default. 2013 WL 5447551, at *1-3. Thus, consistent with Barsom, the Court should enter judgment of possession in favor of Incredible under Rule D. Id.

In contrast, I do not find that judgment should enter on Incredible's petitory claim under Rule D to the "legal title" of the Secured Property. Unlike Barsom, neither the Promissory Note nor the Security Agreement conferred legal title on Incredible. Compare Barsom, 2013 WL 5447551, at *3 (collateral agreement assigned to lender "all right, title and interest" in vessel),

with ECF No. 1-2 at 1 (Security Agreement signed by Mr. Cohen states, "I grant to Lender a security interest"). While I do not credit Outerlimits' argument that Incredible's petitory claim fails because Incredible's Security Agreement is not a preferred ship mortgage pursuant to 46 U.S.C. § 31322, ECF No. 24 at 1, it is beside the point.[6] What matters is that the admitted facts establish only that Incredible is a secured party with a security interest conferring the right to possess and sell (including the right to convey title to any buyer as Mr. Cohen's attorney-in-fact); the operative documents do not confer title. See generally id. at 3-4. Also flawed is Incredible's contention that it is the holder of title to the Vessel under Nevada law because it perfected its security interest with the filing of a certificate making it the "legal owner" under Nevada law; the problem is that Nevada law provides that such a "legal owner" is merely "a secured party under a security agreement relating to a vessel." Nev. Rev. Stat. § 488.035 (11) & (15). Therefore, to the extent that Incredible's motion for judgment seeks an award to it of title to the Secured Property under Rule D, I recommend that the motion be denied.

### B. *In Personam* Claim against Mr. Cohen

Invoking the Court's supplemental jurisdiction pursuant to 28 U.S.C.§ 1367, Count III asserts a state law claim (under Wisconsin law per the operative agreements)[7] for the money

---

[6] Incredible's right to relief is based on Rule D; the Court need not address the confusing argument injected into the case by Outerlimits concerning whether Incredible holds a preferred ship mortgage.

[7] Incredible's brief cites to Rhode Island law for the elements of a breach of contract claim. ECF No. 20 at 12. However, the Promissory Note clearly calls for the application of Wisconsin law, which is not materially different from the law of Rhode Island. Compare Barkan v. Dunkin Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (for "breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff") (footnote omitted), with CAP Servs., Inc. v. Schwartz, No. 16-CV-671-WMC, 2017 WL 6209918, at *5 (W.D. Wis. Dec. 7, 2017) ("elements for a breach of contract in Wisconsin are familiar; the plaintiff must show [1] a valid contract that [2] the defendant breached and [3] damages flowing from that breach"). Mindful that Rhode Island courts treat a contractual choice of laws clause as enforceable and that the Promissory Note calls for application of Wisconsin law to the extent not preempted, I have relied on Wisconsin law. Rhode Island Charities Tr. v. Engelhard Corp., 109 F. Supp. 2d 66, 73 (D.R.I. 2000) (in Rhode Island, a choice of law provision in contract is enforceable where transaction bears reasonable relationship to both Rhode Island and another state), aff'd, 267 F.3d 3 (1st Cir. 2001);

13

damages caused by Mr. Cohen's breaches of the Promissory Note (and the Modification Agreement) and the Security Agreement. The facts admitted and deemed admitted establish that Incredible is entitled to judgment of liability for the breaches. These include that Mr. Cohen executed the Promissory Note; that Incredible performed its obligation to make available to him the loan of $255,600; that Mr. Cohen breached his duty to pay pursuant to the Promissory Note (and the Modification Agreement), as well as the duties established by the Security Agreement to notify Incredible of insurable losses, to pay insurance proceeds to Incredible and to obtain consent to move the Secured Property; and that Mr. Cohen's default entitles Incredible to judgment for its contractual damages caused by these breaches, including interest, attorney's fees and expenses. See United Cent. Bank v. Maple Ct. LLC, No. 10-CV-00464, 2013 WL 4517243, at *5 (E.D. Wis. Aug. 27, 2013). Accordingly, I recommend that the Court enter interim judgment against Mr. Cohen of liability for breach of the Promissory Note, the Modification Agreement and the Security Agreement, with the amount of the final judgment to be determined in further proceedings in this case in accordance with Wisconsin law.

## IV.   Conclusion

In reliance on Rule D and the Court's admiralty jurisdiction, as well as in reliance on Wisconsin law and the Court's supplemental jurisdiction, I recommend that the Court grant in part and deny in part Incredible's motion for judgment on the pleadings (ECF No. 20) as follows: (1) that the Court enter partial final judgment *in rem* in favor of Incredible and against Mr. Cohen on Count I for possession of the Secured Property, with the right to sell and convey title as set

---

Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc., 802 F. Supp. 680, 687 (D.R.I. 1992) (choice of law provision reasonable where, *inter alia*, choice of law jurisdiction was defendant's principal place of business).

out in the Security Agreement;[8] (2) that the Court deny the motion for judgment of title on Count II; and (3) that the Court enter partial interim judgment *in personam* in favor of Incredible and against Mr. Cohen on Count III, adjudging Mr. Cohen liable to Incredible based on his breaches of the Promissory Note, the Modification Agreement and the Security Agreement with further proceedings for calculation of the net damages to be awarded. Upon judgment on Count I for possession becoming final, I further recommend that Incredible's replevin claim (Count IV) against the Secured Property be dismissed without prejudice and that Mr. Cohen be exonerated from any ongoing responsibility with respect to the Secured Property, including for ongoing *custodia legis* fees and expenses incurred by Outerlimits. Finally, I recommend that the Court's orders make clear that Mr. Cohen's rights under applicable law and pursuant to the terms of the Promissory Note and the Security Agreement, including his right to the surplus (if any) remaining following any sale of the Secured Property and the satisfaction in full of any and all liens (including Incredible's judgment and Outerlimits' maritime liens and *custodia legis*) will not be adversely impacted.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 14, 2023

---

[8] I do not recommend that the Court direct entry of final judgment immediately pursuant to Fed. R. Civ. P. 54(b) because Incredible did not make such a request.